IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-10612

_____


DOE, Mrs, on behalf of John Doe, on behalf of Jack Doe, on
behalf of James Doe; ET AL

             Plaintiffs

JOHN DOE; JOE DOE; MS ROE, as next friend on Jack Roe;
MS SMITH, as next friend of James Smith

             Plaintiffs - Appellants

      v.

DALLAS INDEPENDENT SCHOOL DISTRICT, ET AL

             Defendant

DALLAS INDEPENDENT SCHOOL DISTRICT

             Defendant - Appellee

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

July 24, 2000

Before KING, Chief Judge, and GARWOOD and DeMOSS, Circuit Judges.

KING, Chief Judge:

     Plaintiffs-Appellants appeal the district court's grant of

summary judgment in favor of Defendant-Appellee Dallas

Independent School District on their claims brought under Title

IX of the Education Amendments of 1972.  We affirm.

I. FACTUAL AND PROCEDURAL HISTORY

John Earl McGrew, a third-grade teacher and Boy Scout troop leader at Joseph J. Rhoades Elementary School ("J.J. Rhoades"), sexually molested numerous male students between 1983 and 1987. He was subsequently convicted in state court on one count of aggravated sexual assault and two counts of indecency with a child. McGrew was sentenced to one life sentence and two twenty-year sentences.

After McGrew's criminal conviction, a number of his victims brought this action against the Dallas Independent School District ("DISD"), John Earl McGrew, the Boy Scouts of America, Circle Ten Council, Inc. Boy Scouts of America, J.J. Rhoades, Linus Wright, Marvin Edwards, and Barbara Patrick.[1] Mrs. Doe on behalf of John Doe, Joe Doe, Jack Doe, and James Doe[2] originally filed the case in state court. The case was subsequently removed to the United States District Court for the Northern District of Texas. The complaint alleged claims under 42 U.S.C. § 1983, Title IX of the Education Amendments of 1972, see 20 U.S.C. §

---

[1] J.J. Rhoades was not named as a defendant as of Plaintiffs' First Amended Complaint, filed on March 2, 1994. Plaintiffs stipulated to the dismissal with prejudice of Marvin Edwards and Linus Wright as defendants on July 26, 1996. Plaintiffs entered into an agreed order dismissing with prejudice all claims against the Boy Scouts of America and Circle Ten Council, Inc. Boy Scouts of America on October 11, 1996.

[2] The names of the minor victims were changed to protect their identities for the purposes of filing this action. The initials of the boys' actual names are used to identify them in depositions and affidavits.

1681, and Texas tort law. The plaintiffs in this action later amended their complaint to add a claim under the Constitution of the state of Texas.

The district court dismissed the plaintiffs' Title IX claim because it concluded that same-sex sexual harassment was not actionable under Title IX. The district court also dismissed the plaintiffs' claims brought under Texas tort law and claims for damages under the Texas Constitution, leaving only the § 1983 claim intact. On November 24, 1995, a second lawsuit was filed in federal district court by other minor victims of McGrew. This second lawsuit, brought by or on behalf of Plaintiffs-Appellants Bob Black, Bill Black, William White, and George Green, alleged the same facts and asserted identical claims as that brought by the Does, Ms. Roe, and Ms. Smith. On February 20, 1996, it was consolidated with the first-filed action.[3]

On July 30, 1996, defendants DISD and Barbara Patrick, who was the principal of J.J. Rhoades at the time of the alleged abuse (collectively, "Defendants"), filed a motion for summary judgment on Plaintiffs' remaining § 1983 claims, arguing that (1) no grounds existed upon which DISD could be held liable for McGrew's misconduct, and (2) Patrick was entitled to qualified immunity. On October 29, 1996, the district court granted summary judgment in favor of Defendants on all of Plaintiffs'

---

[3] We will refer collectively to the plaintiffs from both lawsuits as "Plaintiffs."

3

§ 1983 claims.  The court entered a final judgment on all claims in favor of Defendants on March 5, 1997.  Plaintiffs timely appealed to this court.

We affirmed the district court's grant of summary judgment. See Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211 (5th Cir. 1998) ("Doe I").  This court held that DISD neither delegated to school principals the authority to create policies to address allegations of sexual abuse nor acted with deliberate indifference towards its students' constitutional rights by failing to adopt an official policy to protect against the sexual abuse of students.  See Doe I, 153 F.3d at 216-17.  We also affirmed the district court's determination that Patrick was entitled to qualified immunity because although she had notice of the abuse as of the spring of 1986,[4] she did not act with deliberate indifference.  See id. at 218-19.  With respect to Plaintiffs' Title IX claim, we decided that pursuant to the Supreme Court's decision in Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998), the Plaintiffs' complaint had stated a valid Title IX claim against DISD.  See id. at 219.  However, because we determined that there was insufficient evidence in the record to permit an adjudication on the merits of that claim, we

---

[4]  We based this conclusion on undisputed evidence that J.H., a second-grade student at the time, told Patrick that McGrew had fondled him in the spring of 1986.

4

remanded the case to the district court for further proceedings.

See id. at 219-220.  In so doing, we noted in dicta that

> we in no way intend to suggest that summary judgment
> would be inappropriate if Defendants are able to
> demonstrate, as they did with respect to Plaintiffs' §
> 1983 claims, that no genuine issue of material fact
> exists with respect to Plaintiffs' Title IX claim.
> Indeed, given the factual development that took place
> in this case with respect to the § 1983 claims against
> DISD and Patrick, we can say that if Plaintiffs can
> produce no additional evidence, Defendants will be
> entitled to summary judgment on the Title IX claim.

See id. at 220 n.8.

On September 30, 1998, DISD filed a motion for summary judgment on Plaintiffs' Title IX claim.  DISD argued that it could not be held liable under Title IX because Patrick was not a supervisory official, did not have actual notice of abuse, and did not act with deliberate indifference.  In response, Plaintiffs contended that Patrick was a supervisory official with the power to stop the abuse, had actual notice of abuse both in 1984 and in 1986, and responded with deliberate indifference in both instances.  In support of their opposition, Plaintiffs submitted evidence that had been submitted for the previous summary judgment motion and new evidence in the form of (1) a 1999 affidavit from D.D.P., a plaintiff; (2) a 1999 deposition by Bettye Burrell, Patrick's former secretary; (3) a 1999 affidavit by John McGrew; and (4) a 1999 deposition of Robert Johnston, Special Assistant to the Superintendent for Administration of DISD.

5

The district court granted DISD's motion on April 20, 1999. In its memorandum decision, the district court assumed without deciding that Patrick was the appropriate person to be notified in order for DISD to be liable under Title IX. The court then discounted D.D.P.'s 1999 affidavit as a subsequent affidavit contradicting prior testimony without explanation, and held that Plaintiffs had offered insufficient evidence to create a genuine issue of material fact as to whether Patrick had actual notice of McGrew's misconduct in 1984. Furthermore, the court found that there was no evidence that any of the DISD officials and staff members who had allegedly been told of abuse prior to 1986 had communicated this information to Patrick. Finally, the court, citing our finding for the purposes of § 1983 in Doe I, held that Patrick's actions in response to the 1986 report of abuse did not rise to the level of deliberate indifference. On the same day, the district court entered a final judgment in favor of DISD and awarded it costs. Plaintiffs timely appeal.

## II. DISCUSSION

Plaintiffs argue on appeal that the district court improperly disregarded a 1999 affidavit, and incorrectly concluded that Plaintiffs' evidence failed to create a genuine issue of material fact as to Patrick's deliberate indifference. We disagree.

6

## A.  Standard of Review

We review the grant of summary judgment de novo, applying the same criteria employed by the district court in the first instance.  See Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994).  To prevail on summary judgment, a movant must demonstrate that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).  If the movant succeeds in making that showing, the nonmoving party must set forth specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings. See FED. R. CIV. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986).  We review the evidence, and the inferences to be drawn therefrom, in the light most favorable to the non-moving party.  See Lemelle v. Universal Mfg. Corp., 18 F.3d 1268, 1272 (5th Cir. 1993).

## B.  Title IX

Title IX provides, in pertinent part, that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal

7

financial assistance . . . ." 20 U.S.C. § 1681(a). Although the statute provides for administrative enforcement of this mandate, the Supreme Court has held that Title IX is also enforceable through an implied private right of action. See Cannon v. Univ. of Chicago, 441 U.S. 677 (1979). In Franklin v. Gwinnett County Public Sch., 503 U.S. 60 (1992), the Supreme Court subsequently established that monetary damages are available in such an action. See 503 U.S. 60. Franklin further stated that sexual harassment of a student by a teacher constitutes actionable discrimination for the purposes of Title IX. See id. at 75.

In Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 280 (1998), the Supreme Court set forth the standard under which a school district may be held liable for damages under Title IX for a teacher's sexual harassment of a student. The Court held that

> in cases like this one that do not involve official
> policy of the recipient entity, . . . a damages remedy
> [against the school district] will not lie under Title
> IX unless an official who at a minimum has authority to
> address the alleged discrimination and to institute
> corrective measures on the recipient's behalf has
> actual knowledge of discrimination in the recipient's
> programs and fails adequately to respond.

524 U.S. at 290. The Supreme Court further decided in Gebser that "the response must amount to deliberate indifference to discrimination" for the school district to be liable in damages. Gebser, 524 U.S. at 290. As this court noted in Doe I, "[t]he deliberate indifference standard is a high one." Doe I, 153 F.3d at 219 (applying deliberate indifference standard for purposes of

8

§ 1983 qualified immunity analysis).  Officials may avoid liability under a deliberate indifference standard by responding reasonably to a risk of harm, "even if the harm ultimately was not averted."  Farmer v. Brennan, 511 U.S. 825, 844 (1994); see also Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 648 (1999) (defining deliberate indifference for purposes of finding school district liability under Title IX for student-to-student harassment as when the "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances").  Moreover, determining what constitutes appropriate remedial action for allegations of discrimination in Title IX cases "'will necessarily depend on the particular facts of the case . . . .'"  Rosa H., 106 F.3d at 660-61 (quoting Waltman v. Int'l Paper Co., 875 F.2d 468, 479 (5th Cir. 1990) (Title VII decision)).

Thus, to defeat Defendants' motion for summary judgment, Plaintiffs must adduce evidence sufficient to create a genuine issue of material fact that Patrick (1) had authority to address the alleged abuse by McGrew and to institute corrective measures on DISD's behalf, (2) had actual notice of discrimination, and (3) acted with deliberate indifference.  We agree with the district court that Plaintiffs have failed to create a genuine issue of material fact either with regard to Patrick's actual notice in late 1984 or with regard to whether Patrick's actions

in response to the 1986 report amounted to deliberate indifference.

*1. Supervisory Official with the Power to End the Abuse*

As the district court noted, neither the Supreme Court nor this court has decided which individuals must have known of allegations of sexual abuse in order to support a finding that the school district had actual notice of discrimination. See Rosa H., 106 F.3d at 660 (limiting liability to cases in which "those school employees in the chain of command whom the school board has appointed to . . . remedy the wrongdoing themselves" had actual notice, without naming specific individuals). We agree with the district court that it is unnecessary to determine whether Patrick, as the principal of J.J. Rhoades, had the authority to take corrective action to end McGrew's abuse of students under DISD policies during the relevant period. Instead, we assume without deciding that Patrick was an official with the power to remedy discrimination on behalf of DISD for the purposes of determining whether Patrick had actual notice of discrimination and acted with deliberate indifference. We now turn to that inquiry.

*2. Actual Notice*

10

Whether an official had actual notice is a question of fact. See Farmer, 511 U.S. at 842.  Thus, the question of whether Patrick had actual notice may be resolved as a matter of law where, as here, the facts are not in dispute.  See Olabisiomotosho v. City of Houston, 185 F.3d 521, 527-28 (5th Cir. 1999) (finding no genuine issue of material fact as to actual notice).  Plaintiffs contended before the district court that Patrick had actual notice that McGrew was abusing male students (1) in late 1984, when D.D.P., a plaintiff in this action, reported to her that McGrew had touched his genitals in the lunchroom and had touched him on several occasions in McGrew's classroom, and (2) in the spring of 1986, when J.H. reported that McGrew had fondled him while he was bringing McGrew a note from another teacher.  The district court found that Plaintiffs failed to create a fact issue as to whether Patrick had actual notice in 1984, but concluded that Patrick had notice in 1986.  Plaintiffs appeal the first finding, and DISD complains of the second.  We address each finding in turn.

### a.  1984

In support of the contention that Patrick had notice in 1984, Plaintiffs submitted "new" evidence in the form of an

11

affidavit by D.D.P.,[5] dated January 23, 1999 ("1999 affidavit").[6] The 1999 affidavit is D.D.P.'s third recounting under oath of McGrew's abuse and the events that followed. In January 1988, D.D.P. swore out an affidavit before a Dallas police officer ("1988 affidavit"). He stated that in late November 1984, McGrew touched his genitals in the lunchroom. D.D.P. further stated that after this occurred, he "went down to the office and told Ms. Patrick and Mr. Beckham about what happened."

D.D.P. was subsequently deposed in 1996. In his deposition, D.D.P. stated that McGrew had touched his genitals in the lunchroom, and that McGrew had also abused him several times in McGrew's classroom. He further stated that he told the administrative staff in Patrick's office of McGrew's act, but

_____

[5] D.D.P. is now twenty-two years old, and swore out the 1999 affidavit using his full name. For the sake of consistency, however, we will continue to refer to him as D.D.P.

[6] Plaintiffs also submitted the 1999 deposition of Bettye Burrell, Patrick's former secretary. Burrell testified that Patrick generally left her door open, and that Burrell was located about six feet from Patrick's office. Plaintiffs introduced this evidence in conjunction with D.D.P.'s 1996 deposition testimony stating that he told Patrick's office staff that McGrew had abused him, and that he could see Patrick talking on the phone in her office because her door was open at the time. Plaintiffs maintained before the district court that the sum of this evidence demonstrated that D.D.P. could have rationally believed that Patrick heard him when he reported the abuse to Patrick's office staff. The district court concluded that this evidence was speculative and thus insufficient to create a genuine issue of material fact. Plaintiffs do not explicitly challenge this conclusion on appeal, but argue that Burrell's deposition, along with McGrew's 1999 affidavit and Johnston's 1999 deposition, constitutes "powerful additional evidence" supporting a denial of summary judgment.

12

that Patrick was actually in her office, talking on the phone, at the time.  When asked, "You never actually had a conversation with Ms. Patrick about what Mr. McGrew did to you, did you?" D.D.P. answered, "No."  D.D.P. also stated that he never put his accusations in writing.

The 1999 affidavit asserts that D.D.P.'s 1988 affidavit, in which he stated that he told Patrick that McGrew had abused him, is accurate; and that D.D.P.'s 1996 deposition, in which he stated that he told the people in Patrick's office but not Patrick herself that McGrew had abused him,[7] is not.  In the 1999 affidavit, D.D.P. states that the incident was fresh in his memory in 1988, and that he gave a truthful statement at that time.  D.D.P. then explains that after the incident with McGrew, D.D.P. "tried hard over the years not to think about it and put it out of my head," and therefore that by 1996, he "did not have enough memory of what really happened to allow [him] to testify fully and accurately about what Mr. McGrew did or [his] report of what [McGrew] did."  D.D.P. further asserts in the 1999 affidavit that he was not shown his 1988 affidavit during his deposition, and that he was not asked during his deposition why his testimony had changed between 1988 and 1996.  The affidavit concludes that,

_____

[7]  The district court concluded that there was no evidence that the office staff, or any other school personnel, communicated allegations of abuse by McGrew to Patrick. Plaintiffs do not challenge this conclusion on appeal.

as a result, the 1988 affidavit, not the 1996 deposition, is an accurate account of his communication with school personnel.

The district court ruled that the 1999 affidavit contradicted the 1996 deposition testimony, and cited authority from our circuit holding that a plaintiff may not manufacture a genuine issue of material fact by submitting an affidavit that impeaches prior testimony without explanation.  This authority stands for the proposition that a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment.  See S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996) (citations omitted); Thurman v. Sears, Roebuck & Co., 952 F.2d 128, 136 n.23 (5th Cir.), cert. denied, 506 U.S. 845 (1992) (citations omitted); Albertson v. T.J. Stevenson & Co., Inc., 749 F.2d 223, 228, 233 n.9 (5th Cir. 1984).  As some of our sister circuits have observed,

> If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.

Perma Research and Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969) (citations omitted); see also Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1365-66 (8th Cir. 1983) (stating that courts should scrutinize conflicts between affidavit and deposition testimony and only grant summary judgment when those conflicts raise only sham issues); Radobenko

14

v. Automated Equip. Corp., 520 F.2d 540, 544 (9th Cir. 1975) (quoting Perma Research).

Plaintiffs argue on appeal that the district court erred in disregarding this 1999 affidavit and the 1988 affidavit that it endorses. They contend that the 1999 affidavit explained why the 1996 deposition testimony differed from the version of events contained in the 1988 affidavit, and thus that the rule should not have been applied.[8] We disagree.

Instead, we are convinced that the explanation offered by the 1999 affidavit was insufficient to create a genuine issue of material fact on the issue of whether D.D.P. directly told Patrick of the abuse by McGrew. There is no allegation that D.D.P. was not represented by counsel at the 1996 deposition; he was thoroughly questioned about his communications with school personnel; and the testimony was unequivocal. Cf. Clark v. Resistoflex Co., A Div. of Unidynamics Corp., 854 F.2d 762, 766-

---

[8] Plaintiffs also argue that the application of the rule subverts Federal Rule of Evidence 803(5). See FED. R. EVID. 803(5) (creating a hearsay exception for recorded recollections, defined as "[a] memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly."). We are unpersuaded by this argument. Rule 803(5) pertains to the admissibility of recorded recollections, and the admissibility of the 1988 affidavit has not been disputed. Plaintiffs cite no authority for the proposition that Rule 803(5) is frustrated when a court declines to consider contradictory evidence contained in a recorded recollection in the form of an affidavit, and our research has likewise uncovered none.

67 (5th Cir. 1988) (summary judgment based on fact issue raised by subsequent affidavit was appropriate when attorney only asked one question on subject at deposition and thus affidavit supplemented deposition testimony). Furthermore, in his 1996 deposition, D.D.P. responded to certain questions by stating that he could not answer because he did not recall what had happened. Thus, he knew that if he did not remember whether a particular event had occurred or the details of how that event occurred, he could say, "I do not recall" in response to a question regarding that event during his deposition. However, he failed to do so when asked whether he directly told Patrick about the abuse. Although we sympathize with D.D.P.'s desire to eradicate the painful memory of the abuse, we cannot say that D.D.P.'s assertions in a 1999 affidavit that he succeeded in doing so by 1996 create an issue of fact as to whether he told Patrick that McGrew had abused him in 1984. Thus, in the absence of a dispute of fact, the district court correctly held as a matter of law that Patrick did not have actual notice in 1984.

### b. 1986

The undisputed summary judgment evidence demonstrates that in the spring of 1986,[9] Sandra Thomas reported to Claude Bandy,

---

[9] The district court noted that Patrick testified at McGrew's trial that J.H's complaint was brought in 1986, but testified at her deposition for this action that the complaint was brought in 1987. Like the district court, we assume for the purposes of this discussion that the incident occurred in 1986.

the parent ombudsman for J.J. Rhoades, that her son J.H. claimed that McGrew had fondled him. The evidence further shows that Bandy informed Patrick of J.H.'s allegation, and that Thomas spoke to Patrick by telephone. After speaking to his mother on the phone, Patrick called J.H. down to her office and asked him to describe to her what happened. He reported that his teacher had sent him into McGrew's classroom with a note, and that McGrew had touched him "in his private place" while he was standing at McGrew's desk. Thomas came to J.J. Rhoades the next day to meet with Patrick and McGrew. Prior to the meeting with McGrew, Patrick spoke to Thomas and J.H.

Based on this undisputed evidence, the district court concluded that Patrick had actual notice of an allegation of sexual abuse in spring 1986. In its Brief of Appellee, DISD argues that knowledge of a mere allegation of abuse does not constitute actual knowledge that a student is being abused. DISD also contends that "[a]n allegation that is investigated and determined to be untrue should not form the basis of actual knowledge even if that determination is tragically flawed." We decline to address these arguments because the facts of this case do not require us to decide whether Patrick had actual notice of discrimination. Instead, we assume arguendo that she did, and proceed to the question of whether Patrick's actions in response

17

to J.H.'s 1986 allegation of sexual abuse by McGrew amounted to deliberate indifference.

### 3. Deliberate Indifference

Whether an official's response to actual knowledge of discrimination amounted to deliberate indifference likewise may appropriately be determined on summary judgment. See Davis, 526 U.S. at 649; Doe I, 153 F.3d at 219 (deciding on summary judgment that school officials were entitled to qualified immunity because they did not act with deliberate indifference). As discussed above, the undisputed summary judgment evidence demonstrates that Patrick spoke to Sandra Thomas on the phone, and told her to come to school for a meeting with Patrick and McGrew. When Thomas and J.H. arrived at school, Patrick spoke to both of them. At some point, Patrick also asked J.H. to repeat his accusation to McGrew. During the meeting, Patrick and Thomas both asked McGrew directly if he had fondled J.H., and he denied it.[10] At the close of the meeting, Patrick told Thomas that she would make sure that J.H. was not sent to McGrew's classroom again. Once Thomas had left, Patrick told McGrew that the accusation was very

---

[10] Patrick testified that McGrew denied the allegation and offered no explanation for why the report might have been made. McGrew stated in his 1999 affidavit that he told Thomas and Patrick that he had not "touched" J.H., but had spanked him, and that J.H. was "mad" because of the spanking. We think that these slightly different versions do not create an issue of fact as to deliberate indifference.

serious, and led him to understand that he should not repeat the behavior that made the child accuse him of abuse.  McGrew remembers this warning somewhat differently:  "She told me the school does not put up with the kind of behavior I had been accused of and that if it really did take place, I would be dealt with."  Patrick also spoke to J.H.'s teacher, who confirmed that she had sent him to McGrew's classroom with a note, and who stated that J.H. had not mentioned any misconduct by McGrew to her when he returned to her classroom.

Plaintiffs argue that the evidence demonstrates that Patrick's investigation was a sham, and that, in fact, she desired to cover up J.H.'s allegation of sexual abuse in order to protect J.J. Rhoades' reputation.  In support of that argument, Plaintiffs point to evidence that Patrick asked another student, W.J.H., during the 1983-84 school year whether McGrew had touched him inappropriately.  In addition, Plaintiffs submitted evidence that Patrick informed Thomas that McGrew was a good teacher and that Patrick knew J.H. was lying; that Patrick asked Thomas to not discuss J.H.'s accusations with any other teachers or parents; and that Patrick acted "nasty" towards Thomas.  Other evidence indicated that Patrick told McGrew, prior to the meeting with Thomas, "McGrew, I don't think [the accusation is] true, but we have to meet with the parent and discuss it."  McGrew also described Patrick's demeanor towards him as "supportive."  Finally, Plaintiffs submitted the deposition testimony of Robert

19

L. Johnston, Special Assistant to the Superintendent for Administration of DISD, who testified that he found no documents referring to McGrew or Plaintiffs in the context of sexual abuse allegations in files kept at J.J. Rhoades. From this, Plaintiffs would have us infer that Patrick intentionally failed to document J.H.'s allegation so that the report would be easier to cover up.

Plaintiffs also contend that Patrick was deliberately indifferent because she failed to perform certain actions pursuant to her investigation of J.H.'s allegation. In particular, Plaintiffs point to the fact that Patrick failed to report J.H.'s allegation to Child Protective Services, failed to tell McGrew not to spank a child again, failed to monitor McGrew further or make him attend additional training, and failed, in fact, to ever raise the issue of sexual abuse with him again until his arrest. Thus, Plaintiffs argue, they have presented sufficient evidence of deliberate indifference to preclude a grant of summary judgment in favor of DISD.

However, even drawing all reasonable inferences in favor of Plaintiffs, we must agree with the district court that Plaintiffs have failed to create a genuine issue of material fact. Patrick interviewed J.H., spoke with his mother, spoke with J.H.'s teacher, spoke with McGrew and warned him either that he would be "dealt with" if the accusations were founded or that he should avoid acting in a way that could be misconstrued. She concluded, in error, that J.H.'s allegation was not true, and her erroneous

20

conclusion had tragic consequences.  However, we cannot say on the facts before us that these actions, though ineffective in preventing McGrew from sexually abusing students, were an inadequate response to J.H.'s allegation.  See Doe I, 153 F.3d at 219 ("We can foresee many good faith but ineffective responses that might satisfy a school official's obligation in these situations, e.g., warning the state actor, notifying the student's parents, or removing the student from the teacher's class.") (quoting Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 456 n.12 (5th Cir.) (en banc), cert. denied sub nom Lankford v. Doe, 513 U.S. 815 (1994)); cf. Davis, 526 U.S. at 648 (refusing to hold that "administrators must engage in particular disciplinary action" to avoid liability).  As a result, we conclude that the district court correctly granted summary judgment in favor of DISD.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.

21